IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 04-cv-02616-ZLW-KLM

KERRY R. HICKS,

    Plaintiff(s),

v.

THE CADLE COMPANY,
BUCKEYE RETIREMENT CO., LLC, LTD.,
WILLIAM E. SHAULIS, and
DANIEL C. CADLE,

    Defendant(s).
_____

# ORDER
_____

**ORDER ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Plaintiff's **Motion to Hold Daniel C. Cadle in Contempt and Request for Forthwith Hearing** [Docket No. 238; filed April 23, 2008] (the "Motion for Contempt"). The Court has reviewed the Motion for Contempt, Plaintiff's Exhibits in Support of the Motion for Contempt [Docket No. 239; filed April 23, 2008], Defendant Daniel C. Cadle's Response [Docket No. 241; filed April 28, 2008], Plaintiff's Reply [Docket No. 242; filed April 30, 2008], the entire case file and applicable case law and is sufficiently advised in the premises. Accordingly, IT IS HEREBY **ORDERED** that the Motion for Contempt is **GRANTED IN PART AND DENIED IN PART**, as set forth below.

**I.**     **Statement of the Case**

1

By Order dated October 17, 2007, Senior Judge Weinshienk ordered that Plaintiff's Supplemental Complaint be referred to arbitration to be conducted by JAMS [Docket No. 229 at p. 3]. On April 10, 2008, Judge John P. Leopold, the JAMS arbitrator presiding over the case, entered an Order requiring each party and counsel to execute the "Standard Form JAMS Arbitration Fee Agreement and Cancellation Policy." ("Arbitration Agreement"). *Motion for Contempt* [#238], p. 2; Ex. 33. This Order stated, *inter alia*, "JAMS staff has advised me that one or more parties has/have not signed a standard form JAMS Arbitration Fee Agreement and Cancellation Policy . . . . I hereby order each party and counsel representing a party to execute this agreement and return it to JAMS (Denver) so that it is received by April 18, 2008." *Id.*

On April 11, 2008, Defendant Cadle filed a pleading in which he stated that he refused to sign the JAMS Arbitration Agreement as he "would be possibly waiving [his] rights." *Id.* at Ex. 34. He further stated that "there is no basis for this arbitration in JAMS for various reasons, including the fact that the statute of limitation has expired on the note, and by signing the agreement sent, JAMS would retain the arbitration fees including the hearing arbitration fees, even if the case was dismissed by JAMS for lack of jurisdiction . . . ." *Id.* at p. 2. On April 21, 2008, Judge Leopold entered an Order in which he stated, "I am advised by JAMS staff that Mr. Cadle has neither signed the requisite JAMS documents nor has he paid his pro rata share of JAMS' fees . . . . I hereby suspend these proceedings until such time as Mr. Cadle comes into compliance with the afore-referenced JAMS rules." *Id.* at Ex. 35.

Plaintiff argues that "Mr. Cadle's conduct is designed to give him a substantial advantage in the pending arbitration. During the March 17, 2008, status conference, Judge Leopold stated that he would begin ruling on discovery disputes shortly after April 21, 2008, and have such rulings completed in advance of a status conference scheduled for May 5, 2008 . . . . The results of those rulings would determine the scope of the arbitration set for June 24, 2008.  Daniel C. Cadle's continued gamesmanship has now placed the June 24 arbitration hearing date at risk." *Motion for Contempt* [#238], p. 4.  Plaintiff further argues that "JAMS has the right to have its arbitration agreement signed by all participants.  Judge Leopold has the right to expect that all litigants will not only sign the agreement, but pay JAMS as required.  He should not be expected to handle an arbitration ordered by this Court and not be paid." *Id.* at 5.

Defendant argues that he "has complied and will comply with this Court's October 17, 2007 Order compelling the arbitration . . . and . . . will pay his fair share of the arbitration fees." *Response* [#241], p. 1.  He states that he "will not sign the JAMS arbitration agreement and thereby consent to the jurisdiction of the arbitrator. [His] refusal to sign the JAMS arbitration agreement does not constitute contumacious disobedience of the Court's October 17, 2007 Order, but rather is fully permissible under Magistrate Judge Shaffer's April 20, 2006 Order." *Id.* at 4.  Defendant finally argues that there is a legitimate good faith dispute regarding the allocation of the arbitration fees.  *Id.* at 5.

II. **Analysis**

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., establishes "a federal policy favoring arbitration" and requires courts to "rigorously enforce agreements to arbitrate." *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987) (internal quotation marks and citations omitted). The FAA directs the court to "stay the trial of the action until such arbitration has been had." 9 U.S.C. § 3. Pursuant to this mandate, the court's role is limited to determining, first, whether arbitration should be compelled, and second, whether the arbitration award should be confirmed, vacated or modified. *See id.* at §§ 3-4, 9-11. As such, the FAA does not authorize the courts to interfere with ongoing arbitration proceedings by making interlocutory rulings related to the arbitration. *See In re Universal Serv. Fund Tel. Billing Practices Litig.*, 370 F.Supp.2d 1135, 1138 (D.Kan 2005). The rationale behind the principle disfavoring judicial interference with the arbitration process is based on the "congressional purpose that the arbitration procedure, when selected by the parties to a contract, be speedy and not subject to delay and obstruction in the courts." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 (1967). However, "[t]his does not mean that upon entering the order compelling arbitration the court must entirely refrain from acting again until the arbitration award is finalized." *In re Universal Serv. Fund Tel. Billing Practices Litig.*, 370 F.Supp.2d at 1139. That is, a court may enforce its order compelling arbitration by "for example, imposing sanctions against a party who contradicts the court's order compelling arbitration . . . ." *Id.* (citing *LaPrade v. Kidder Peabody & Co., Inc.*, 146 F.3d 899, 899 (D.C. Cir. 1998)).

The gist of Defendant's argument is that because he refused to sign the arbitration

agreement in a previous arbitration in this case (referred to as "Arbitration II") before Arbitrator Frank Dubofksy, and was not compelled to sign the arbitration agreement by Magistrate Judge Shaffer, that he is within his rights to refuse to sign the arbitration agreement in the arbitration at hand (referred to as "Arbitration III"). *Response* [#241], p. 3. He states that his "refusal to sign the JAMS arbitration agreement does not constitute contumacious disobedience of the Court's October 17, 2007 Order, but rather is fully permissible under Magistrate Judge Shaffer's April 20, 2006 Order." *Id.* at 4.

In the April 20, 2006 hearing before Magistrate Judge Shaffer on the identical issue of Defendant Cadle's refusal to sign the Arbitration Agreement in Arbitration II, Magistrate Judge Shaffer stated, "[Judge Weinshienk] has ordered that this proceed according to JAMS . . . [Defendants] are bound by the JAMS agreement. Now, whether they choose to sign it or not is immaterial." *Response* [#241], Ex. 1, p. 7. Magistrate Judge Shaffer next stated, "I expect [Defendants] to sign . . . and that is an order." *Id.* at p.16. Magistrate Judge Shaffer also stated, "as long as something's going on in front of JAMS, it will be conducted pursuant to JAMS policies, procedures and regulations, and it doesn't much matter to me whether somebody signs something or not." *Id.* at p. 23. Accordingly, it appears that Defendant Cadle never signed the JAMS Arbitration Agreement in Arbitration II.

However, in Arbitration II, it was Plaintiff who raised the issue of Defendant Cadle's failure to sign the Arbitration Agreement and Plaintiff who brought the issue before Magistrate Judge Shaffer. *Reply* [#242], p. 3. In the arbitration at hand, the issue has been

5

raised by Arbitrator Leopold, who has suspended the proceedings until Defendant Cadle signs the arbitration agreement. There is no evidence before the Court that in Arbitration II, Arbitrator Dubofksy either ordered Defendant Cadle to sign the agreement or suspended the proceedings until such time as Defendant Cadle signed the agreement. Accordingly, while Defendant Cadle's inexplicable failure to sign the agreement in Arbitration II may have been acceptable as it did not hinder the proceedings, it is clearly hindering the proceedings in the arbitration at hand.

The Court's research has not found, and the parties have not cited, any Tenth Circuit decisions which directly address the issues raised in the pending motion. However, it is well-established that "it is essential that the federal courts recognize that the arbitrator is in the best position to make decisions relating to and affecting the parties to the arbitration, and to defer to the arbitrator's judgment, absent abuse of his power." *Checkrite of San Jose, Inc. v. Checkrite, Ltd.*, 640 F.Supp. 234, 236 (D.Colo. 1986) (citing *United Steelworkers of America v. Ideal Cement Co.*, 762 F.2d 837, 840-41 (10th Cir. 1985)). Further, "[f]ederal courts are to give great deference to an arbitrator's decision on matters of procedure . . . . Basically, matters of procedure lie within the discretion of the arbitrators." *Id.* (citations omitted). Finally, it is also within the authority of the federal courts to impose sanctions on parties who engage in dilatory or improper behavior in an action that has been ordered to arbitration. *See, e.g., LaPrade*, 145 F.3d at 906.

District Judge Weinshienk has ordered the parties to arbitration. The arbitrator has ordered the parties to sign the JAMS Arbitration Agreement. As "matters of procedure lie

6

within the discretion of the arbitrators," and as federal courts are directed to defer to the procedural decisions of arbitrators, this Court finds that Defendant Cadle's refusal to sign the agreement has delayed and potentially jeopardized the arbitration proceedings, and that it has become necessary for this Court to take action. *Checkrite of San Jose*, 640 F.Supp. at 236.

Accordingly, IT IS HEREBY **ORDERED** that the Motion for Contempt is **GRANTED** to the extent it seeks an Order compelling Defendant Cadle to sign the Arbitration Agreement. Defendant Cadle is ordered to immediately sign the JAMS Arbitration Agreement. Defendant Cadle is further directed to refrain from any future behavior that may potentially delay the arbitration proceedings.

To the extent the Motion for Contempt seeks sanctions or attorneys fees, this request is **DENIED**. Although I find Defendant Cadle's arguments unpersuasive, I do not find them so frivolous as to merit attorney's fees or sanctions. However, Defendant Cadle is warned that any further dilatory or improper behavior on his part will result in the entry of sanctions against him.

BY THE COURT:

__s/ Kristen L. Mix_____

United States Magistrate Judge

Dated: June 2, 2008