IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Zita L. Weinshienk

Civil Action No. 04-cv-02616-ZLW-KLM

KERRY R. HICKS,

        Plaintiff,

v.

THE CADLE COMPANY,
BUCKEYE RETIREMENT CO., LLC, LTD.,
WILLIAM E. SHAULIS, and
DANIEL C. CADLE,

        Defendants.

---

## ORDER

---

The matters before the Court are:  (1) Plaintiff's Motion To Confirm Phase II
Arbitration Award And To Enter Judgment For Phase I And II Awards (Doc. No. 162),
(2) Defendant Daniel C. Cadle's Motion To Vacate Phase II Arbitration Award (Doc.
No. 197), and (3) the Motion To Vacate Arbitration Award filed by Defendants The
Cadle Company, Buckeye Retirement Co., LLC. Ltd., and William E. Shaulis (Doc.
No. 199).  The Court has reviewed carefully the moving and responding papers and
the applicable legal authority.

I.    **Background**

This case arises from a dispute concerning collection activities on a promissory
note.  On December 3, 2004, Plaintiff Kerry R. Hicks filed a Complaint in State Court in
Denver against Defendants The Cadle Company; Buckeye Retirement Co., LLC. LTD.
(Buckeye); William E. Shaulis; Daniel C. Cadle; and Bank of America, N.A. (Bank or
BOA).  The action was removed to this Court on December 20, 2004.  In his Complaint,

Plaintiff alleged that in 1999, he and other officers of a company called Specialty Care Network (SCN) borrowed $3,550,000 from the Bank via a promissory note dated December 31, 1999 (Note). Plaintiff's portion of the loan responsibility was $2 million individually and $350,000 jointly with another officer, Patrick Jaeckle, as guarantors for SCN. Walter Choppin, a Senior Vice President of Bank of America, agreed to this division of liability. However, just before the transaction was to close, Choppin faxed Plaintiff a version of the Note which reflected that Plaintiff and Jaeckle were jointly and severally liable on the entire value of the Note. Choppin told Plaintiff not to worry, because Plaintiff's liability under the Note was limited to $2 million as had been discussed, but that the Bank simply needed Plaintiff's signature "for processing requirements" until Jaeckle's collateral was perfected. Plaintiff executed the Note. The Note contains an arbitration provision which states in part that,

> ANY CONTROVERSY OR CLAIM BETWEEN OR AMONG
> THE PARTIES HERETO INCLUDING BUT NOT LIMITED
> TO THOSE ARISING OUT OF OR RELATING TO THIS
> INSTRUMENT . . . INCLUDING ANY CLAIM BASED ON OR
> ARISING FROM AN ALLEGED TORT, SHALL BE
> DETERMINED BY BINDING ARBITRATION . . . .[1]

Plaintiff paid $2 million on the Note in January 2000 and SCN paid off its $350,000 liability. Choppin told Plaintiff that Plaintiff's name would be taken off of the Note once Jaeckle's collateral was perfected. The Note was renewed twice, ultimately reflecting a remaining principal amount of $1 million. Choppin told Plaintiff that Jaeckle was solely responsible for the $1 million balance, but that Plaintiff's signature was

---

[1] Doc. No. 162-2 at 4.

required until Jaeckle's collateral could be perfected. However, Jaeckle's collateral was never perfected, and Jaeckle never paid on the Note.

In October 2002, the Bank sold the Note to The Cadle Company, which immediately commenced collection efforts against Plaintiff. Plaintiff's attorney wrote to The Cadle Company and the Bank explaining that Plaintiff had no liability on the Note, and the Bank thereafter informed The Cadle Company that by the time the Note was sold to The Cadle Company, the Bank had concluded that Plaintiff was not obligated under the Note, which conclusion was conveyed to The Cadle Company when the Note was sold. The Cadle Company nonetheless continued its collection efforts against Plaintiff.

In September of 2003, The Cadle Company, through Buckeye, sued Plaintiff for default on the Note in U.S. District Court in Tennessee, despite the arbitration provision in the Note. The Bank ultimately repurchased the Note, at which point Plaintiff apparently was dismissed from the Tennessee action. The Bank then sold the Note to a third party. Thus, none of the Defendants in this action are current holders of the Note.

On October 23, 2003, Plaintiff initiated arbitration proceedings before JAMS, asserting claims against The Cadle Company and Buckeye for filing what he claimed to be the vexatious and frivolous Tennessee lawsuit, against Buckeye for abuse of process based on the Tennessee suit, for defamation based on The Cadle Company/ Buckeye's statements to a third party that Plaintiff was liable on the Note, and for a declaration that Plaintiff is not liable on the Note. Plaintiff also asserted claims against the Bank.

Plaintiff filed the present action in state court on December 3, 2004, just over a year into the arbitration. The action was removed to this Court, and Plaintiff thereafter filed an Amended Complaint on January 13, 2005, alleging that in September 2004, after the Bank had repurchased the Note, Shaulis, a Vice President of The Cadle Company, acting of behalf of The Cadle Company, Buckeye, and Daniel Cadle, submitted allegations of bank fraud against Plaintiff to the Attorneys General of Colorado and Tennessee. Contending that Shaulis' purpose in doing so was to intimidate Plaintiff in order to gain leverage in the ongoing arbitration proceeding, Plaintiff asserted claims of abuse of process, defamation *per se*, and intentional infliction of emotional distress. On January 14, 2005, the Court stayed this action pending the completion of the ongoing arbitration.

On January 25, 2005, the JAMS arbitrator, James D. Hinga, ordered that the claims asserted in Plaintiff's Second Amended Demand For Arbitration would be heard at the arbitration hearing set for February 1-4, 2005, and that the additional issues raised in (1) Plaintiff's Third Amended Demand For Arbitration,[2] (2) Cadle and Buckeye's counterclaims for tortious interference and abuse of process, and (3) the claims in Plaintiff's Amended Complaint filed in this Court were bifurcated and stayed pending completion of the February 1-4, 2005, arbitration hearing.[3] Thus, as Defendants have described them, the "Phase I" arbitration claims were based on the Bank's sale of the Note to The Cadle Company and Defendants' filing of the Tennessee lawsuit, while the "Phase II" arbitration claims were based upon (1) Defendants' lodging

---

[2] The Third Amended Demand For Arbitration asserted additional claims against the Bank.

[3] See Doc. No. 139 at 2-3.

of criminal allegations of bank fraud against Plaintiff and (2) Defendants' counterclaims for abuse of process (based upon Plaintiff's filing of this lawsuit) and tortious interference (based on Plaintiff's denial of liability on the Note in communications to the Bank).

On April 4 and 28, 2005, Arbitrator Hinga entered an Arbitration Award and Final Arbitration Award on Phase I of the arbitration. The arbitrator dismissed Plaintiff's claims against the Bank and awarded Plaintiff damages of $400,000 against The Cadle Company and Buckeye jointly and severally, plus attorney's fees. Arbitrator Hinga wrote that the filing of the Tennessee action was "offensive" in light of the arbitration clause and that The Cadle Company and Buckeye's conduct was "outrageous" and "beyond all norms of debt collection activity." This Court confirmed the arbitration award on October 26, 2005, deferring entry of judgment until all of the claims in the case were resolved. The Tenth Circuit affirmed.[4]

Phase II of the arbitration was heard by Arbitrator Hinga on February 28 - March 3, 2006. However, Arbitrator Hinga passed away on March 5, 2006, prior to issuing any final order or award. A new arbitration hearing then went forward on October 10-12, 2006, before Retired Judge Frank N. Dubofsky as arbitrator. On May 14, 2007, Judge Dubofsky issued his Order, ruling in Plaintiff's favor on Plaintiff's defamation and emotional distress claims, against Plaintiff on Plaintiff's abuse of process claim, and against Defendants on all of their counterclaims. Citing to Defendants' letters to the Colorado and Tennessee Attorneys General, as well as numerous other letters and communications from Shaulis and Daniel Cadle to various

---

[4] Hicks v. Bank of America, N.A, 2007 WL 521175 (10th Cir. February 21, 2007) (unpublished).

governmental bodies from 2004 to 2006 accusing Plaintiff of illegal conduct, the arbitrator's strongly worded Order stated that Defendants had "engaged in a relentless campaign to defame, intimidate and harass Hicks by raising alleged bank fraud, perjury and other serious allegations against Hicks . . . ."[5] The purpose of this campaign, Judge Dubofsky wrote, was to "retaliate against Hicks for respondents' loss of a business relationship with BOA (which respondents caused), for contesting Cadle's position, [to try to] to force Hicks to compromise his civil claims in order to avoid criminal prosecution, and to intimidate others involved in the process."[6] Judge Dubofsky commented that he had

> never seen a party to a lawsuit engage in such relentless, protracted and destructive conduct to harm another individual. Here, despite the knowledge that there was no bank fraud, Cadle has shown no remorse for the criminal allegations of bank fraud, and he intends to continue making such allegations even after the conclusion of this arbitration.[7]

Judge Dubofsky stated that "Hicks has a legitimate fear that Cadle will not stop his efforts until Hicks is destroyed financially, psychologically, and personally."[8] Ultimately, Judge Dubofsky awarded Plaintiff $750,000 in compensatory damages, stating that the award is against Daniel Cadle but that Buckeye and The Cadle Company are jointly and severally liable, and $950,000 in punitive damages against Daniel Cadle, The Cadle Company, and Buckeye. He awarded $200,000 in compensatory damages against

---

[5] Doc. No. 162-3 at 6-7.

[6] Id. at 7 (footnote omitted).

[7] Id. at 18-19.

[8] Id. at 14.

Shaulis, to be reduced to $1 if Plaintiff and Shaulis are able to so stipulate. He also awarded $10,000 in additional punitive damages against Shaulis, Buckeye, and The Cadle Company, also to be reduced to $1 if Plaintiff and Shaulis are able to so stipulate. In a separate Ruling On Affirmative Defenses, Judge Dubofsky rejected all of Defendants' affirmative defenses. Judge Dubofsky thereafter issued a Final Award on June 18, 2007, incorporating his prior Order and Ruling On Affirmative Defenses and stating that The Cadle Company and Buckeye are jointly and severally liable on the $200,000 award against Shaulis, and awarding prejudgment and post-judgment interest. Plaintiff thereafter filed the present motion to confirm the Final Award,[9] and Defendants moved to vacate it.

On October 29, 2007, Plaintiff filed a Supplemental Complaint pertaining to alleged conduct by The Cadle Company, Buckeye, and Daniel Cadle occurring after the date of Judge Dubofsky's Final Award. The Court has referred the claims in the Supplemental Complaint to arbitration, and the arbitration apparently is pending.

## II.    Legal Standard

Judicial review of an arbitration award is highly deferential and strictly limited.[10] The Court must "give extreme deference to the determination of the arbitration panel for the standard of review of arbitral awards is among the narrowest known to law."[11] "Once an arbitration award is entered, the finality of arbitration weighs heavily in its

---

[9] "Final Award" as used herein shall refer collectively to the May 14, 2007, Order, the May 14, 2007 and Ruling On Affirmative Defenses, and the June 18, 2007, Final Award.

[10] See Bowen v. Amoco Pipeline Co., 254 F.3d 925, 932 (10th Cir. 2001); U.S. Energy Corp. v. Nukem, 400 F.3d 822, 830 (10th Cir. 2005).

[11] Hollern v. Wachovia Securities, Inc., 458 F.3d 1169, 1172 (10th Cir. 2006) (quoting Brown v. Coleman Co., 220 F.3d 1180, 1182 (10th Cir. 2000)).

favor and cannot be upset except under exceptional circumstances."[12]  Courts do not consider the merits of the underlying claims in arbitration, even when the basis for the arbitrator's decision is ambiguous,[13] and an erroneous interpretation or application of law by the arbitrator is not reversible.[14]  This is "[b]ecause a primary purpose behind arbitration agreements is to avoid the expense and delay of court proceedings."[15] The Fourth Circuit Court of Appeals has explained that, "[i]n arbitration cases, courts must break with their usual habit of scrupulously examining the underlying merits of the dispute.  Ordinarily, the reviewing court's task is to enforce the bargained-for decision of the arbitrator and not to evaluate the arbitrator's factual findings or legal analysis."[16]

The Federal Arbitration Act (FAA)[17] provides that an arbitration award may be vacated only:

> (1)  where the award was procured by corruption, fraud, or undue means;
>
> (2)  where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3)  where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material

---

[12] Id. (quoting Ormsbee Dev. Co. v. Grace, 668 F.2d 1140, 1146-47 (10th Cir. 1982)).

[13] See W.R. Grace and Co. v. Local Union 759, 461 U.S. 757, 764 (1983).

[14] ARW Exploration Corp. v. Aguirre, 45 F.3d 1455, 1463 (10th Cir. 1995).

[15] Id. (quoting Foster v. Turley, 808 F.2d 38, 42 (10th Cir. 1986)).

[16] Richmond, Fredericksburg & Potomac R.R. Co. v. Transportation Communications Int'l Union, 973 F.2d 276, 281 (4th Cir. 1992).

[17] 9 U.S.C. § 10(a).

to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

Additionally, courts have held than an award may be vacated based upon a showing of violations of public policy, manifest disregard of the law, or denial of a fundamentally fair hearing.[18] Manifest disregard of the law means "willful inattentiveness to the governing law."[19] Legal error or misunderstanding of the law is not sufficient; the arbitrator must have known the applicable law and explicitly disregarded it.[20]

## III.    Analysis

### A.    Jurisdiction of the Arbitrator

Plaintiff moves to confirm the Final Award pursuant to 9 U.S.C § 9.[21] Defendants oppose the motion and move to vacate it on numerous grounds.[22] First, Defendants contend that Judge Dubofsky exceeded his jurisdiction because Shaulis and Daniel Cadle, individually, were not parties to the Note and thus not subject to its arbitration provision. This issue already has been addressed and resolved by this Court. In the

---

[18] Denver & Rio Grande W. R.R. Co. v. Union Pacific R.R. Co., 119 F.3d 847, 849 (10th Cir. 1997).

[19] Bowen, 254 F.3d at 932.

[20] Id.

[21] 9 U.S.C. § 9 states that "any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court may grant such an order . . . ."

[22] Although Defendant Daniel Cadle briefed the present motions separately from the other Defendants, the Court herein refers collectively to "Defendants'" arguments, since all of the Defendants' arguments are similar if not overlapping and Daniel Cadle expressly incorporated by reference the other Defendants' responsive arguments into his briefing. See Doc. No. 182 at 7.

Order of March 23, 2005, clarifying its prior Order staying the action pending arbitration,

this Court stated:

> In their Joinder In Bank Of America's, N.A., Motion To Stay The Action Pending Completion Of Ongoing Arbitration (Joinder), Defendants asserted that "[t]his action must proceed to arbitration as the arbitration clause in the Promissory Note clearly encompasses all issues and claims asserted by Hicks."
>
> Although not styled as a formal motion to compel arbitration, perhaps because an arbitration proceeding already was pending, Defendants' statement that this action must proceed to arbitration in essence requested the Court to compel the parties to arbitrate. By making the request, all Defendants consented to the jurisdiction of the arbitrator for resolution of all claims set forth in the Amended Complaint. In staying this action, the Court relied on this consent so that, as requested by Defendants, all claims among the parties to this action could be arbitrated. Therefore, judicial estoppel precludes any of the Defendants from claiming that they are not subject to the arbitrator's jurisdiction for resolution of the claims in the Amended Complaint.
>
> The refusal of Shaulis and Cadle to submit to the jurisdiction of the arbitrator is clearly inconsistent with the position they took earlier in their Joinder. They succeeded in persuading the Court to accept their position that the arbitration provision encompassed the claims against them; therefore, sustaining their inconsistent position before the arbitrator would create the perception that either the Court or the arbitrator has been misled. Finally, if not estopped, Shaulis and Cadle would "derive an unfair advantage or impose an unfair detriment on" Plaintiff by delaying Plaintiff's right to proceed against them in this action without further delay.[23]

---

[23] Doc. No 19 at 2-3 (internal citations omitted).

The Tenth Circuit cited to the Court's March 23, 2005, Order in concluding that The Cadle Company was estopped from claiming that it was not subject to arbitration since all of the Defendants had argued that the Note encompassed all of Plaintiff's claims.[24] This conclusion applies equally to Defendants Shaulis and Daniel Cadle as to The Cadle Company. The Court finds that the arbitrator properly exercised jurisdiction over the individual Defendants.

Defendants also argue that the parties never agreed or intended that the arbitration cover torts, and that Plaintiff's tort claims could not, in any event, be arbitrated because those claims concerned "subsequent" acts, meaning, apparently, acts which took place after Plaintiff's original statement of claims was filed. However, the Note's arbitration provision expressly requires arbitration of "any controversy or claim between or among the parties hereto including but not limited to those arising out of or relating to this instrument . . . including any claim based on or arising from an alleged tort . . . ."[25] Additionally, on January 15, 2007, Judge Dubofsky granted Plaintiff's motion to amend his complaint to conform to the evidence, allowing evidence of the letters and other communications to government agencies alleging illegal conduct by Plaintiff which were sent "subsequent to the original matter which gave rise to the

---

[24] See Hicks, 2007 WL 521175 at *5 (concluding that The Cadle Company was subject to the jurisdiction of the arbitrator because "Cadle defendants [defined earlier in the opinion as The Cadle Company, Buckeye, Shaulis, and Daniel Cadle] asserted that this action must be arbitrated because the arbitration clause in the note clearly encompassed all of the issues and claims that Hicks asserted.")

[25] Doc. No. 162-2 at 4.

arbitration."[26]  Judge Dubofsky reasoned that this evidence raised issues similar to those in the arbitration and "there is a risk [that it] could be the basis for additional arbitration complaints and claims."[27]  Although The Cadle Company no longer holds the Note, the arbitration provision survives the expiration of the Note,[28] and the parties' dispute concerning Plaintiff's liability on the Note and Defendants' efforts to collect on it was the genesis of, and is factually intertwined with, Defendants' letter-writing campaign against Plaintiff which is the subject of Plaintiff's tort claims.  Finally, citing to Koch v. Compucredit Corp.,[29] an unpublished case from the U.S. District Court for the Eastern District of Arkansas, Defendants argue that if Plaintiff had no remaining debt under the Note, then there was no remaining agreement to arbitrate under the Note.  Defendants do not cite, and the Court has not found, any controlling authority setting forth such a rule.  Regardless, the Court agrees with Plaintiff that Koch is distinguishable, since it was undisputed in Koch that no debt remained on the Note at the time the Note was assigned.  In the present case, there was no agreement that Plaintiff had been released from liability under the Note at the time the Note was assigned, or at the time that arbitration was commenced.

---

[26] Doc. No. 195-5 at 2.

[27] Id.

[28] See Riley Mfg. Co., Inc. v. Anchor Glass Container Corp., 157 F.3d 775, 782 (10th Cir. 1998).

[29] 2007 WL 991070 (E.D. Ark. 2007) (unpublished).

**B.     Manifest Disregard of the Law**

Defendants argue that Judge Dubofsky manifestly disregarded the law in numerous ways.  First, Defendants argue that Judge Dubofsky disregarded the Tennessee parol evidence rule and statute of frauds[30] by "validating" Plaintiff's assertion of an oral side agreement with the Bank.  Defendants cite to case law in which courts have applied the Tennessee statute of frauds to hold borrowers liable on notes despite alleged oral agreements relieving them of such liability.[31]  A review of the arbitration award reveals that Judge Dubofsky did not, however, disregard the statute of frauds and related case law; rather, he expressly stated that the statute of frauds "has little, if any, significance in determining the fraud issue," since "even *if* the statute of frauds bars enforcement of the oral understanding, Hicks did not engage in fraud."[32]  Defendants do not address this specific conclusion, and do not otherwise explain how an application of the statute of frauds or parol evidence rule could determine any legal claim at issue in this case.  Defendants' argument does not provide grounds for vacating the arbitrator's award.

---

[30] Tenn. Code Ann. § 29-2-101(b)(1).  The Note states that it shall be governed by and interpreted in accordance with Tennessee law (see Doc. No. Doc. No. 162-2 at 3), and Tennessee law was applied in the arbitration.

[31] See Bilyeu v. Volunteer State Bank, 2006 WL 1005130 (Tenn. Ct. App. Apr. 17, 2006) (unpublished); In re Sallee, 286 F.3d 878 (6th Cir. 2002); Huntington Nat. Bank v. Hooker, 840 S.W.2d 916 (Tenn. App. 1991); Farmers & Merchants Bank v. Petty, 664 S.W. 2d 77 (Tenn. App. 1983).

[32] Doc. No. 162-3 at 13 (emphasis added).  In addressing a similar argument made by Defendants with respect to confirmation of the Phase I award, the Tenth Circuit wrote, "[a]ssuming arguendo that Cadle defendants are correct that the arbitrator erroneously applied the parol evidence rule and side-stepped the note's integration clause, a finding that Hicks was not liable on the note is not a predicate to finding that Cadle defendants engaged in abuse of process."  Hicks,  2007 WL 521175 at *5.

Defendants also argue that Judge Dubofsky exceeded his powers and manifestly disregarded the law by purporting to decide the issue of Plaintiff's criminal liability for bank fraud. Defendants submit that an arbitrator cannot "prosecute" or "render judgment on" Plaintiff's guilt or innocence of bank fraud, since that is the job of the appropriate authorities. However, Judge Dubofsky did not purport to enter a criminal judgment on the issue of bank fraud. Rather, he was required to address whether Defendants' letters alleging that Plaintiff had committed bank fraud were true in order to rule on Defendants' own affirmative defense of truth on the defamation claim, and he did so.

Defendants go on to argue that Plaintiff did in fact commit bank fraud when he "repeatedly executed promissory notes never intending to be bound and supposedly subject to an assurance that he never intended to repay it."[33] However, the arbitrator found that the record was replete with evidence of Plaintiff and Choppin's oral agreement, and correctly concluded that "[i]f a senior vice president makes an oral agreement to a borrower in apparent derogation of the terms of a written contract, the borrower does not commit bank fraud or perjury when he adheres to the oral agreement."[34] "BOA agreed to the limitations on Hicks' liability. BOA has acknowledged that it was not a victim of bank fraud."[35] Defendants present no

---

[33] Doc. No. 181-2 at 22; see also Doc. No. 199 at 3-6.

[34] Doc. No. 162-3 at 26-27.

[35] Id. at 11.

argument undermining the arbitrator's sound conclusion, and otherwise have failed to show that the arbitrator engaged in "willful inattentiveness to the governing law"[36] with regard to the issue of bank fraud.

Defendants further contend that Judge Dubofsky manifestly disregarded the law by granting Plaintiff's motion to amend his claims to conform to the evidence. Defendants also characterize this issue as a "refus[al] to hear evidence pertinent and material to the controversy" pursuant to 9 U.S.C. § 10(a)(3).[37] Plaintiff's motion to amend sought to allow consideration of Shaulis and Daniel Cadle's letters and phone calls to various authorities alleging criminal conduct and wrongdoing by Plaintiff which were sent or made after the September 2004 letters to the Tennessee and Colorado attorneys general. Defendants contend that the arbitrator ignored the relevant law,[38] citing to Ellis v. Arkansas Louisiana Gas Co.,[39] in which the Tenth Circuit stated that "[t]he test for determining whether the pleadings should be deemed amended is whether the opposing party had a fair opportunity to defend and whether it could offer additional evidence if the case were retried on the different theory."[40] In his order granting

---

[36] Bowen, 254 F.3d at 932.

[37] See Doc. No. 181-2 at 24-25.

[38] See id. at 22 n.14.

[39] 609 F.2d 436 (10th Cir. 1979). The Court notes that throughout their briefing, Defendants have failed to comply with D.C.COLO.LCivR 71.D. ("Every citation in a motion, response or reply shall include the specific page . . . to which reference is made.").

[40] Ellis, 609 F.2d at 439. Defendants also cited to Lomartira v. American Auto Ins. Co., 371 F.2d 550 (2nd Cir. 1967) for the same proposition.

Plaintiff's motion, the arbitrator stated that "I essentially agree with claimant that respondents have failed to make an adequate offer of proof as to what additional evidence they would have provided had the specific allegations been plead earlier. Indeed their subsequent allegations were largely a reiteration of the one's [sic] plead here and rise or fall for the same factual or legal reasons."[41]  In an "abundance of caution," however, the arbitrator excluded the last dated letter from Daniel Cadle because "it was too late for Respondent Shaulis to have time to address its contents."[42] The record indicates that the arbitrator applied the relevant standard.[43]

Additionally, Defendants argue that the arbitrator misapplied the Tennessee anti-SLAPP statute.  Again, however, even an erroneous interpretation or application of law by the arbitrator is not reversible,[44] and Defendants have not made the required showing that the arbitrator disregarded the relevant law.  The statute in question provides:

> (a)  Any person who in furtherance of such person's right of free speech or petition under the Tennessee or United States Constitution in connection with a public or govern-mental issue communicates information regarding another person or entity to any agency of the federal, state or local government regarding a matter of concern to that agency

---

[41] Doc. No. 195-5 at 3.

[42] Id.

[43] Moreover, as discussed below, arbitration proceedings are "not constrained by formal rules of procedure or evidence."  Checkrite of San Jose, Inc. v. Checkrite, Ltd., 640 F. Supp. 234, 236 (D. Colo. 1986).

[44] ARW, 45 F.3d at 1463.

shall be immune from civil liability on claims based upon the communication to the agency.

(b) The immunity conferred by this section shall not attach if the person communicating such information:

(1) Knew the information to be false;
(2) Communicated information in reckless disregard of its falsity; or
(3) Acted negligently in failing to ascertain the falsity of the information if such information pertains to a person or entity other than a public figure.[45]

In pertinent part, Judge Dubofsky's award states:

Here, I find that the respondents knew that their statements were false. Cadle testified that he was aware of Harkless' notes in which Choppin indicated that he had obtained approval from his superiors regarding the loan and that Hicks was not liable. Cadle also testified that he did not believe that Hicks committed bank fraud, yet he continued to make such allegations. Before the bank fraud allegations were lodged, Cadle and the other respondents were also aware of BOA's counsel's letter stating that Hicks was not liable on the note. Moreover, respondents continued to lodge such allegations after BOA acknowledged that it was not the victim of bank fraud.[46]

The arbitrator further found that "[d]espite extraordinary resources available to him, Shaulis acknowledged that he never determined what the elements of bank fraud were. He did not thoroughly review the BOA/Buckeye file where he would have seen information exonerating Hicks. The views of the apparent victim (BOA) were given no

---

[45] Tenn. Code Ann. § 4-21-1003.

[46] Doc. No. 162-3 at 16-17.

weight."[47]  Daniel Cadle submits that the First Circuit's holding in <u>United States v.</u> <u>Kenrick</u>[48] that the "intent" element of bank fraud means an intent to defraud, not an intent to injure, somehow establishes that Defendants had a reasonable basis for reporting that Plaintiff had engaged in bank fraud, and means that Judge Dubofsky applied the wrong legal standard.  To the contrary, Judge Dubofsky stated the proper "intent to defraud" standard,[49] found that there was no such intent in this case, and further found that Defendants were fully aware of Plaintiff's lack of liability on the Note.[50] Judge Dubofsky thus expressly concluded that the immunity provided by Tenn. Code Ann. § 4-21-1003(a) did not apply.[51]  There has been no showing that he manifestly disregarded the law in so doing.

Defendants also argue that Judge Dubofsky manifestly disregarded the law by awarding more than $2 against Shaulis, since Plaintiff's post-arbitration brief asked for only $2 against Shaulis.  Defendants are correct that under Tennessee law, a plaintiff cannot recover damages in excess of the damages amount pleaded in the complaint.[52] However, this is a procedural rule, and "matters of procedure lie within the discretion of

---

[47] <u>Id.</u> at 30.

[48] 221 F.3d 19 (1st Cir. 2000).

[49] <u>See</u> Doc. No. 162-3 at 10, citing 9 U.S.C. § 1344.

[50] Judge Dubofsky also stated that "I find that there has been no perjury . . . .  It is apparent from the previously referenced facts and circumstances that neither bank fraud nor perjury occurred and that respondents never had a reasonable objective or subjective belief that it did."  Doc. No. 162-23 at 13.

[51] <u>See</u> Doc No 162-3 at 29-30.  The court further finds that the arbitrator did not manifestly disregard the law by holding all four Defendants liable for tortious conduct in this case.

[52] <u>See</u> <u>Newcomb v. Kohler Co.</u>, 222 S.W.3d 368, 384 (Tenn. App. 2006).

the arbitrators," who are not bound by formal rules of procedure.[53]  Regardless,

Plaintiff's Amended Complaint, filed in this Court pursuant to this Court's procedural

rules, did not and was not required to request a certain dollar amount in damages.[54]

Similarly, Defendants contend that the arbitrator manifestly disregarded Tennessee law

and exceeded his jurisdiction by awarding punitive damages when punitive damages

were not pleaded in the Amended Complaint.  However, even if the arbitrator had been

bound by Tennessee procedural rules of pleading, and he was not, punitive damages

need not be specially pleaded under Tennessee law, and "need not be claimed in so

many words where the conduct would amount to willful and malicious conduct,"[55] as

was the case here.  Defendants' arguments fail.

The arbitrator concluded that Hicks' statements to the Bank that he was not liable

on the Note, at a time when he did not know of any agreement between the Bank and

the Defendants, could not support Defendants' counterclaim of tortious interference with

contractual relations.  Although Defendants have resubmitted portions of Shaulis'

testimony in which Shaulis speculates about the Bank's reactions to Plaintiff's

communications, they have not shown that the arbitrator manifestly disregarded the

law applicable to this counterclaim.

---

[53] See Checkrite, 640 F. Supp. at 236.

[54] See Fed. R. Civ. P. 8(a).  The arbitrator stated that while he understood the generosity leading to Plaintiff's request to limit damages against Shaulis, 'I do not believe my award should be unilaterally determined by either party.  if the parties jointly or collectively stipulate and agree to vacate my award and enter a $1 award, I will likely do so."  Doc. No. 162-3 at 25 n. 15.

[55] See Security Bank and Trust Co. v. Nelms, 1986 WL 7813, *5 (Tenn. Ct. App. July 14, 1986) (unpublished).

Defendants are correct that, under Tennessee law, a plaintiff alleging intentional interference with emotional distress/outrageous conduct must prove that the defendant's conduct caused him or her "serious mental injury."[56] Defendants contend that Plaintiff suffered no such injury in this case. The arbitrator disagreed, finding that, as a result of Defendants' actions, Plaintiff "fears for his family, his own well-being and his personal safety."[57] The arbitrator wrote that "[Plaintiff] suffers from a significant loss of sleep."[58] "[Plaintiff] has described an extremely distressful, painful and protracted psychological response to Cadle's incessant efforts to have him criminally indicted and otherwise financially destroyed."[59] "Respondents have brought his wife and parents into this litigation."[60] "Many people would have collapsed from these unrelenting attacks and pressure."[61] The arbitrator noted that "[Plaintiff] and his wife have delayed starting a family until some level of finality is brought to this proceeding. In addition to fear, worry and loss of sleep, [Plaintiff] testified to his diminished appetite and stress-caused gastrointestinal problems. I find that he has suffered from all of these."[62] The evidence in arbitration unequivocally indicated that Plaintiff has suffered "serious mental injury,"

---

[56] See Newsom v. Textron Aerostructures, 924 S.W. 2d 87, 98 (Tenn. App. 1995).

[57] Doc. No. 162-3 at 14.

[58] Id.

[59] Id.

[60] Id.

[61] Id.

[62] Id. at 15.

and Defendants have failed to establish any manifest error in Judge Dubofsky's findings.

Citing to <u>Shockley v. Crosby</u>,[63] Defendants submit that under Tennessee law, stress symptoms for which Plaintiff never sought medical treatment are "not actionable."[64]  <u>Shockley</u> does not, however, enunciate such a rule.  Rather, the <u>Shockley</u> court considered the plaintiff's failure to seek medical treatment as but one of several factors relevant to his outrageous conduct claim.  The court also noted that there was no evidence that plaintiff had lost sleep or time from work, and that there was no testimony from the plaintiff himself regarding the incident's effect on him.[65] The court made clear that

> [proof of intentional infliction of emotional distress] may include a claimant's own testimony, [cite] as well as the testimony of other lay witnesses acquainted with the claimant, [cite].  Physical manifestations of emotional distress may also serve as proof of serious mental injury. Moreover, evidence that a plaintiff has suffered from nightmares, insomnia, and depression or has sought psychiatric treatment may support a claim of a serious mental injury.[66]

---

[63] 2004 WL 2113052 (Tenn. Ct. App. Sept. 21, 2004) (unpublished).

[64] <u>See</u> Doc. No. 199 at 21.

[65] <u>Shockley</u>, 2004 WL 2113052  at *8.

[66] <u>Id.</u> (internal citations omitted) (quoting <u>Miller v. Willbanks</u>, 8 S.W. 3d 607, 611-12 (Tenn 1999)).

Defendants are incorrect that a plaintiff must have sought medical treatment in order to recover on a claim for intentional infliction of emotional distress. The arbitrator did not manifestly disregard the applicable law on this claim.

Finally, Defendants contend that the arbitrator manifestly disregarded the law by awarding pre-judgment interest.[67] State law applies to the question of the propriety of prejudgment interest on state law claims.[68] Under Tennessee law, prejudgment interest cannot be awarded in personal injury cases. The court in Francois v. Willis[69] made this rule clear:

> One of the legal principles firmly embedded in our jurisprudence is that prejudgment interest is not available in personal injury cases. [Fn. omitted]. The Tennessee Supreme Court first recognized this principle in Louisville & Nashville R.R. v. Wallace, 91 Tenn. 35, 43, 17 S.W. 882, 884 (1891), and this court has recently reiterated it in no uncertain terms. Hollis v. Doerflinger, 137 S.W.3d at 60. [Fn. omitted]. Thus, when faced with a motion for pre-judgment interest in a personal injury case, the trial court must take this legal principle into account and, therefore, must deny the motion because to do otherwise would be to apply an incorrect legal standard.[70]

Plaintiff does not dispute that this is a personal injury action, agrees that Tennessee law applies to the issue of prejudgment interest, and acknowledges that Judge Dubofsky

---

[67] See Doc. No. 162-4.

[68] See United Phosphorus, Ltd. v. Midland Fumigant, Inc., 205 F.3d 1219, 1236 (10th Cir. 2000). Thus, it appears that prejudgment interest is not properly characterized as a "procedural" matter which would be subject to the arbitrator's discretion.

[69] 205 S.W. 3d 915 (Tenn. App. 2006).

[70] Id. at 916.

was provided with all of the relevant case law.[71]  The written Final Award itself does not set forth any authority or reasoning supporting the prejudgment interest award,[72] and the Court otherwise has not located in the record any indication of why Judge Dubofsky apparently rejected or ignored the controlling Tennessee case law on this issue. Plaintiff, for his part, has not come forward with any case law calling into question the clear holding of Francois.  It does appear from the record that the arbitrator manifestly disregarded clear, controlling law mandating that prejudgment interest is not available to Plaintiff in this action.  Therefore, that portion of the Final Award which awards prejudgment interest to Plaintiff will be vacated.

Accordingly, for the reasons set forth above, it is

ORDERED that (1) Plaintiff's Motion To Confirm Phase II Arbitration Award And To Enter Judgment For Phase I And II Awards (Doc. No. 162), (2) Defendant Daniel C. Cadle's Motion To Vacate Phase II Arbitration Award (Doc. No. 197), and (3) the Motion To Vacate Arbitration Award filed by Defendants The Cadle Company, Buckeye Retirement Co., LLC. Ltd., and William E. Shaulis (Doc. No. 199) are granted in part and denied in part.  It is

FURTHER ORDERED that portion of Judge Frank N. Dubofsky's Final Award (consisting of the May 14, 2007, Order, the May 14, 2007 and Ruling On Affirmative Defenses, and the June 18, 2007, Final Award) which awards prejudgment interest on compensatory damages to Plaintiff is vacated.  It is

---

[71] See Doc. No. 195 at 15-16.

[72] See Doc. No. 162-4 at 1.

FURTHER ORDERED that Judge Frank N. Dubofsky's Final Award (consisting of the May 14, 2007, Order, the May 14, 2007 and Ruling On Affirmative Defenses, and the June 18, 2007, Final Award) otherwise is confirmed in all aspects.  It is

FURTHER ORDERED that Plaintiff's Renewed Motion To Expedite Ruling In Connection With Motion To Confirm (Doc. No. 245) is granted.  It is

FURTHER ORDERED that the parties shall file a joint status report on or before August 22, 2008, addressing the status of the arbitration of the claims in Plaintiff's Supplemental Complaint.

DATED at Denver, Colorado, this   23rd   day of July, 2008.

BY THE COURT:

_____
ZITA L. WEINSHIENK, Senior Judge
United States District Court