IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Zita Leeson Weinshienk

Civil Action No. 04-cv-02616-ZLW-KLM

KERRY R. HICKS,

      Plaintiff,

v.

THE CADLE COMPANY,
BUCKEYE RETIREMENT CO., LLC, LTD.,
WILLIAM E. SHAULIS, and
DANIEL C. CADLE,

      Defendants.

---

ORDER

---

The matters before the Court are: (1) Plaintiff's Motion To Confirm Phase III Arbitration Award (Doc. No. 388), (2) the Motion For Partial Confirmation Of Arbitration Award (Doc. No. 406) filed by Defendants The Cadle Company and Buckeye Retirement Co., LLC, Ltd. (Buckeye) (collectively, Buckeye Defendants), and (3) Defendant Daniel C. Cadle's (Cadle) Motion To Vacate Arbitration III Award (Doc. No. 420).  The Court has reviewed the moving and responding papers and the applicable legal authority.

## I.  Background

On July 23, 2008, the Court issued an Order confirming in part and vacating in part the June 18, 2007, arbitration award issued by Retired Judge Frank N. Dubofsky on what the parties and Court have referred to as the "Phase II" arbitration proceedings.[1]

---

[1]The factual and procedural background of this case prior to the June 18, 2007, arbitration award was set forth in the Court's July 23, 2008, Order and will not be repeated herein.  See Doc. No. 256 at 1-7.

After the court entered Judgment pursuant to Fed. R. Civ. P. 54(b), the parties appealed, and on December 7, 2009, the United States Court of Appeals for the Tenth Circuit affirmed the Judgment confirming the arbitration award and reversed only as to the Court's vacatur of post-award, prejudgment interest.[2]  The United States Supreme Court denied Defendants' petition for a writ of certiorari on October 4, 2010.[3]

On October 29, 2007, Plaintiff filed a Supplemental Complaint asserting claims of Defamation *Per Se* and Intentional Infliction of Emotional Distress against the Buckeye Defendants and Cadle based on alleged conduct by said Defendants occurring after the conclusion of the Phase II arbitration hearings.[4]  Specifically, Plaintiff alleged that in June 2007, Cadle sent eight letters to various State Attorneys General and others falsely accusing Plaintiff of perjury and/or bank fraud, and told Judge Dubofsky that he had also made accusations of bank fraud by Plaintiff to the FBI.[5]  In an Order dated October 17, 2007, the Court referred the claims in the Supplemental Complaint to arbitration "for the reasons set forth in the Court's March 23, 2005, Order."[6]  The arbitration of those claims is hereinafter referred to as the "Phase III" arbitration.

The parties proceeded to participate in an eleven-day arbitration of the Phase III arbitration claims in late 2009 before Retired Judge John Leopold of JAMS.  On February 18, 2010, Judge Leopold issued a written Arbitration Award ruling in favor of

---

[2]Hicks v. Cadle Co., 2009 WL 4547803 (10th Cir. Dec. 7, 2009) (unpublished).

[3]Doc. No. 440.

[4]Doc. No. 231.

[5]Id. at 6.

[6]Doc. No. 229 at 2.

Plaintiff on his claims against Cadle, awarding Plaintiff $1,250,000 in compensatory damages and $1,900,000 in punitive damages against Cadle only.  Judge Leopold ruled that Plaintiff had not established his claims against the Buckeye Defendants, and that the Buckeye Defendants had not established their counterclaim against Plaintiff for abuse of process.[7]  Judge Leopold subsequently issued an Order on March 8, 2010, awarding Plaintiff post-award, prejudgment interest at the rate of 10% per annum.[8]

## II.    Legal Standard

Judicial review of an arbitration award is highly deferential and strictly limited.[9] The Court must "give extreme deference to the determination of the arbitration panel for the standard of review of arbitral awards is among the narrowest known to law."[10] "Once an arbitration award is entered, the finality of arbitration weighs heavily in its favor and cannot be upset except under exceptional circumstances."[11]

The Federal Arbitration Act (FAA) provides that an arbitration award may be vacated only:

> (1)  where the award was procured by corruption, fraud, or undue means;
>
> (2)  where there was evident partiality or corruption in the arbitrators, or either of them;

---

[7]Doc. No. 388-2 at 13, 20.

[8]Doc. No. 388-3.

[9] See Bowen v. Amoco Pipeline Co., 254 F.3d 925, 932 (10th Cir. 2001); U.S. Energy Corp. v. Nukem, Inc., 400 F.3d 822, 830 (10th Cir. 2005).

[10] Hollern v. Wachovia Securities, Inc., 458 F.3d 1169, 1172 (10th Cir. 2006) (quoting Brown v. Coleman Co., 220 F.3d 1180, 1182 (10th Cir. 2000)).

[11]Hollern, 458 F.3d at 1172 (quoting Ormsbee Dev. Co. v. Grace, 668 F.2d 1140, 1146-47 (10th Cir. 1982)).

(3)  where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4)  where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.[12]

## III.   Analysis

### A.   Plaintiff's Motion To Confirm Phase III Arbitration Award and Defendant Daniel C. Cadle's Motion To Vacate Arbitration III Award

Plaintiff moves the Court for an order confirming the Phase III arbitration award pursuant to 9 U.S.C. § 9.[13]  Cadle moves to vacate the award on the grounds that (1) the arbitrator did not have jurisdiction over Cadle, and (2) Plaintiff made a demand for a jury trial in the Supplemental Complaint which was never withdrawn or waived. Because the arguments raised in Plaintiff's Motion To Confirm Phase III Arbitration Award and Defendant Daniel C. Cadle's Motion To Vacate Arbitration Award are substantially similar and overlapping, the Court addresses the two motions together.

### 1.   Arbitral Jurisdiction

Relying on 9 U.S.C. §10(a)(4), which provides that an arbitration award may be vacated where the arbitrator "exceeded [his] powers," Cadle contends that the Phase III

---

[12]9 U.S.C. § 10(a).

[13]9 U.S.C. § 9 provides that "any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected . . . ."

arbitration award must be vacated because the arbitrator had no jurisdiction over him or the claims asserted in the Supplemental Complaint.[14]

### a.    Judicial Estoppel

Plaintiff argues that Cadle is judicially estopped from challenging arbitral jurisdiction over the claims asserted against him in the Supplemental Complaint.  Cadle disagrees.  The Court has already ruled on this issue.  In its October 17, 2007, Order the Court referred the claims in the Supplemental Complaint to arbitration "for the reasons set forth in the Court's March 23, 2005, Order."[15]  The March 23, 2005, Order stated that all of the Defendants, which included Cadle, were subject to the jurisdiction of the arbitrator with respect to the claims in the Amended Complaint based on judicial estoppel:

> The Court determines that all Defendants voluntarily have submitted to the jurisdiction of the arbitrator for resolution of the claims in the Amended Complaint.  The general rule is that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."  In their Joinder In Bank Of America's, N.A., Motion To Stay The Action Pending Completion Of Ongoing Arbitration (Joinder), Defendants asserted that "[t]his action must proceed to

---

[14]As Plaintiff points out, the Court, not the arbitrator, determines the issue of arbitrability, see Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83 (2002), and the arbitrator exercised jurisdiction in the Phase III arbitration pursuant to the Court's October 17, 2007, Order compelling arbitration.  Cadle essentially is arguing not that the arbitrator exceeded the scope of the Court's October 17, 2007, Order but, rather, that the October 17, 2007, Order was erroneous.  As such, it would appear that Cadle's objection to arbitral jurisdiction would be more appropriately reserved for an appellate challenge to the Court's October 17, 2007, Order than presented as grounds for a motion to vacate the arbitration award pursuant to 9 U.S.C. § 10(a)(4).  Nonetheless, the Court entertained the same argument with respect to Cadle's motion to vacate the Phase II arbitration award, and will proceed to address it again herein.

[15]Doc. No. 229 at 2.

arbitration as the arbitration clause in the Promissory Note clearly encompasses all issues and claims asserted by Hicks."

Although not styled as a formal motion to compel arbitration, perhaps because an arbitration proceeding already was pending, Defendants' statement that this action must proceed to arbitration in essence requested the Court to compel the parties to arbitrate.  By making the request, all Defendants consented to the jurisdiction of the arbitrator for resolution of all claims set forth in the Amended Complaint. In staying this action, the Court relied on this consent so that, as requested by Defendants, all claims among the parties to this action could be arbitrated.  **Therefore, judicial estoppel precludes any of the Defendants from claiming that they are not subject to the arbitrator's jurisdiction for resolution of the claims in the Amended Complaint.**

The refusal of Shaulis and Cadle to submit to the jurisdiction of the arbitrator is clearly inconsistent with the position they took earlier in their Joinder.  They succeeded in persuading the Court to accept their position that the arbitration provision encompassed the claims against them; therefore, sustaining their inconsistent position before the arbitrator would create the perception that either the Court or the arbitrator has been misled.  Finally, if not estopped, Shaulis and Cadle would "derive an unfair advantage or impose an unfair detriment on" Plaintiff by delaying Plaintiff's right to proceed against them in this action without further delay.[16]

On appeal, the Tenth Circuit affirmed as to this issue, holding that all of the Defendants were judicially estopped from asserting lack of arbitral jurisdiction over the claims in the Amended Complaint.[17]

---

[16]Doc. No. 19 at 2-3 (internal citations omitted and emphasis added).

[17]Hicks, 2009 WL 4547803 at *5-6.  Under the Tenth Circuit's holding, Cadle's additional argument that a party cannot be compelled to arbitration on the basis of judicial estoppel lacks merit.

The Amended Complaint asserted claims against Defendants for Abuse of
Process, Defamation *Per Se,* and Intentional Infliction of Emotional Distress based upon
allegations that, in September 2004, Defendant William Shaulis, acting on behalf of the
other Defendants, falsely accused Plaintiff of criminal bank fraud in statements and
letters to various public and private entities.[18]  Plaintiff's Supplemental Complaint
asserted claims against all Defendants except Defendant Shaulis for Defamation *Per Se*
and Intentional Infliction of Emotional Distress based upon allegations that, in June
2007, Cadle, acting on behalf of the other Defendants, falsely accused Plaintiff of
criminal bank fraud and perjury in letters to various public and private entities.  The
claims in the Amended Complaint were compelled to arbitration based on judicial
estoppel because Defendants had stated to the Court their position that the relevant
arbitration clause "clearly encompasses all issues and claims" asserted in the Amended
Complaint.  The "issues and claims" in the Supplemental Complaint differ only in that
they pertain to acts performed three years later.  Judge Leopold stated in his written
Arbitration Award that "the conduct in question is substantially similar to that in those
previous arbitration hearings.  Most significantly, the core issues that gave rise to the
[Phase II] arbitration and those in this arbitration are the same."[19]  Thus, because
Defendants, including Cadle, were judicially estopped from asserting that the arbitrator
lacked jurisdiction over the claims in the Amended Complaint, Cadle also is judicially

---

[18]Doc. No. 14.

[19]Doc. No. 388-2 at 3.

7

estopped from asserting that the arbitrator lacked jurisdiction over the claims against him in the Supplemental Complaint.

### b.    The Note's Arbitration Provision

Cadle also argues that there was no arbitral jurisdiction over him with respect to the claims in the Supplemental Complaint because he was not a party to the Note containing the arbitration provision, and did not act as an agent of the Buckeye Defendants.  The Tenth Circuit previously addressed this argument in its Order and Judgment of December 7, 2009, stating that although Cadle was never a party to the Note,

> [he] joined the motion for a stay and requested that all claims be decided by arbitration.  Also, under the circumstances presented here, [Cadle and Shaulis] are bound by the arbitration clause as agents of The Cadle Company and Buckeye.  See Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 7 F.3d 1110, 1121 (3d Cir. 1993) ("Because a principal is bound under the terms of a valid arbitration clause, its agents, employees, and representatives are also covered under the terms of such agreements."); Arnold v. Arnold Corp., 920 F.2d 1269, 1281 (6th Cir. 1990) (following policy favoring arbitration, court decided that nonsignatories of arbitration agreement can be bound under agency principles).[20]

This is the law of the case.[21]

---

[20]Hicks, 2009 WL 4547803 at *5.

[21]See Arizona v. California, 460 U.S. 605, 618 (1983) (the law of the case doctrine posits that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.").

Plaintiff cites to <u>Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.</u>[22] in support of his argument that the claims against him in the Supplemental Complaint should not have been compelled to arbitration.  In <u>Stolt-Nielsen</u>, the United States Supreme Court held that an arbitration panel may not infer the parties' assent to class-action arbitration where the arbitration agreement is silent on the issue, since "class-action arbitration changes the nature of arbitration to such a degree that it cannot be presumed the parties consented to it by simply agreeing to submit their disputes to an arbitrator."[23] While the Court, in so holding, relied upon established precedent articulating the "consensual nature of private dispute resolution"[24] and the duty of courts and arbitrators to "give effect to the intent of the parties,"[25] the Court in no part addressed the application of judicial estoppel or agency to the arbitrability of claims.  <u>Stolt-Nielsen</u> does not undermine the Tenth Circuit's determination in this case that Cadle is bound by the arbitration clause based upon principles of judicial estoppel and agency.

Additionally, in <u>Bel-Ray Co., Inc. v. Chemrite Ltd.</u>,[26] also discussed in the parties' briefing, the United States Court of Appeals for the Third Circuit recognized that in <u>Pritzker</u>, the arbitration provision was broad enough to encompass claims against the agents of the defendant brokerage firm where the provision required arbitration of "all

---

[22]130 S. Ct. 1758 (2010).

[23]<u>Id.</u> at 1775.

[24]<u>Id.</u> at 1774.

[25]<u>Id.</u> at 1775.

[26]181 F.3d 435 (3rd Cir. 1999).

controversies which may arise between us," since the brokerage firm could only act through its agents and employees.[27]  The arbitration provision at issue in the present case is equally broad if not broader, requiring arbitration of "any controversy or claim between or among the parties hereto including but not limited to those arising out of or relating to this instrument . . . ."[28]  As previously determined by the Tenth Circuit, Cadle was bound by the arbitration clause as agent for the Buckeye Defendants, to whom the Note had been assigned.

Cadle also contends that Judge Leopold concluded that there was no agency relationship between Cadle and either The Cadle Company or Buckeye.[29]  The Court has located no such conclusion within the text of the Phase III Arbitration Award.  Again, the Tenth Circuit determined that Cadle was bound by the arbitration clause as an agent of the Buckeye Defendants.  This is the law of the case.

Cadle goes on to argue that any duty he had to arbitrate terminated when Bank of America reacquired the Note.  This issue has already been decided in this case.  In its Order of July 23, 2008, this Court determined that while The Cadle Company no longer holds the Note, under Riley Mfg. Co., Inc. v. Anchor Glass Container Corp.,[30] the arbitration provision survives the expiration of the Note.[31]  Subsequently, the Tenth

---

[27]Id. at 443 (citing Pritzker, 7 F.3d at 1122).

[28]Doc. No. 162-2 at 4.

[29]See Doc. No. 411 at 4-5; Doc. No. 429 at 6-7.

[30]157 F.3d 775 (10th Cir. 1998).

[31]See Doc. No. 256 at 12.

Circuit cited to Riley in holding that the arbitrator had jurisdiction over the claims even though the alleged torts were committed after the Note had been reacquired by Bank of America.[32]  In arguing the issue yet again, Cadle now cites to Litton v. NLRB,[33] in which the Supreme Court held that, under the National Labor Relations Act, a union grievance filed after the expiration of a collective bargaining agreement containing an arbitration provision must be arbitrated "where it involves facts and occurrences that arose before expiration."  Even if the Court were to consider this argument one more time, Litton does not require a different result, since the claims in the Supplemental Complaint, like the claims in the Amended Complaint, do "involve" certain "facts and occurrences that arose" before Bank of America reacquired the Note, since they involve Cadle's continued attempts to report allegations that Plaintiff engaged in bank fraud prior to Bank of America's reacquisition of the Note.  Cadle's duty to arbitrate did not terminate when the Note was reacquired.

### 2.    Demand for Jury Trial

Cadle argues that because Plaintiff made a demand for jury trial in his Supplemental Complaint, Cadle's right to a jury trial on the claims in the Supplemental Complaint was violated by the arbitration of those claims.  However, as discussed above, Cadle was bound by the arbitration provision in the Note, which encompassed

---

[32]Hicks, 2009 WL 4547803 at *5 (citing Riley, 157 F.3d at 781).

[33]501 U.S. 190 (1991).

the claims in the Supplemental Complaint.  A party waives its right to a jury trial "by signing an agreement to arbitrate or by binding itself to arbitration as a nonsignatory through traditional principles of contract or agency law,"[34] and there is no constitutional right to a jury trial on claims which are required to be arbitrated pursuant to a valid arbitration provision.[35]  Because Cadle was bound to arbitration of the claims in the Supplemental Complaint, he waived his right to a jury trial as to those claims.

**B.     The Buckeye Defendants' Motion For Partial Confirmation Of Arbitration Award**

The Buckeye Defendants move for an order confirming that portion of the Phase III Arbitration Award which determined that Plaintiff had not established his claims against the Buckeye Defendants by a preponderance of the evidence.  The Buckeye Defendants also state, however, that they "have contested and continue to contest that referral to arbitration was proper in this case . . . ."[36]  Plaintiff opposes the motion on the basis that the Buckeye Defendants cannot object to the jurisdiction of the arbitrator while simultaneously requesting that a portion of the arbitration award be confirmed. The Buckeye Defendants reply that if moving to confirm one aspect of the award means

---

[34] R.J. Griffin & Co. v. Beach Club II Homeowners Assoc., Inc., 384 F.3d 157, 164 (4th Cir. 2004).

[35] See Koveleskie v. SNC Capital Markets, Inc., 167 F.3d 361, 368 (7th Cir. 1999).

[36] Doc. No. 406 at 2.

that they must waive their objection to arbitral jurisdiction, then they withdraw their motion to confirm.[37]

Because Plaintiff has moved to confirm the Phase III Arbitration Award in its entirety, and the Court grants that motion herein, the Buckeye Defendants' additional motion to confirm one part of that award adds nothing to the analysis.  The Court will allow the requested withdrawal of the Buckeye Defendants' motion.

Accordingly, for the reasons set forth above, it is

ORDERED that Plaintiff's Motion To Confirm Phase III Arbitration Award (Doc. No. 388) is granted.  It is

FURTHER ORDERED that Defendant Daniel C. Cadle's Motion To Vacate Arbitration III Award (Doc. No. 420) is denied.  It is

FURTHER ORDERED that the Motion For Partial Confirmation Of Arbitration Award (Doc. No. 406) filed by Defendants The Cadle Company and Buckeye Retirement Co., LLC, Ltd. is withdrawn.  It is

FURTHER ORDERED that the Final Arbitration Award on the Phase III Arbitration claims, which incorporates the Arbitration Award issued February 18, 2010 and the Order issued March 8, 2010, hereby is confirmed in all aspects.  It is

---

[37]See Doc. No. 422 at 2-4.

13

FURTHER ORDERED that a separate Judgment shall be entered as follows:

(1) in favor of Plaintiff Kerry R. Hicks and against Defendant Daniel C. Cadle in the total amount of $3,150,000, which includes compensatory damages in the amount of $1,250,000 and punitive damages in the amount of $1,900,000;

(2) awarding Plaintiff Kerry R. Hicks post-arbitration award, prejudgment interest at a rate of 10% per annum from February 18, 2010, until Judgment is entered; and

(3)   awarding Plaintiff Kerry R. Hicks post-judgment interest at the statutory rate from the date the Judgment is entered until the date the Judgment is satisfied.

DATED at Denver, Colorado this 4th day of November, 2010.

BY THE COURT:

_____

ZITA LEESON WEINSHIENK, Senior Judge
United States District Court